1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
9                            AT TACOMA

10   KIMBERLY ANNE KEISTER,

11                      Plaintiff,                CASE NO. 11-cv-05216-RBL-JRC

12        v.                                      REPORT AND
                                                  RECOMMENDATION ON
13   MICHAEL J. ASTRUE, Commissioner              PLAINTIFF'S COMPLAINT
     of the Social Security Administration,
14                                                NOTING DATE: MARCH 9, 2012
                        Defendant.
15

16

17        This matter has been referred to United States Magistrate Judge J. Richard

18   Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR

19   4(a)(4), and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261,

20   271-72 (1976).  Plaintiff has filed an Opening Brief (ECF No. 18) and defendant has filed

21   a Response (ECF No. 19).

22        The ALJ failed to evaluate properly the appropriate period of alleged disability

23   and failed without sufficient explanation or legitimate reasons to give controlling weight

24

to the opinion by plaintiff's treating physician that plaintiff likely would suffer absenteeism of three or more days a month when attempting even sedentary work full time. The ALJ also erred in relying on plaintiff's limited daily activities when considering plaintiff's credibility without a finding of contradiction with plaintiff's testimony or a finding of transferability to a work setting.

For these reasons, the Court recommends that this matter be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings.

## BACKGROUND

Plaintiff, KIMBERLY ANNE KEISTER, was born in 1956 and was fifty-one years old on her amended alleged onset date of disability of July 10, 2008 (Tr. 30-32, 246). Plaintiff worked for six years as a dental assistant and nine years as a school bus driver, which was her last job (Tr. 70-71, 275). Plaintiff alleged that she was limited in her ability to work initially by joint pain and muscle pain and that her breathing problems began to affect her after that (Tr. 70-71).

## PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits in September, 2006 (Tr. 248-50). Her application was denied initially and following reconsideration (Tr. 148-51, 154-55). Her requested hearing was held before Administrative Law Judge Thomas Robinson ("the ALJ") on February 20, 2009 (Tr. 59-85). On May 6, 2009, the ALJ issued a written decision in which he found that plaintiff was not disabled pursuant to the Social Security Act (Tr. 101-11). On September 24, 2009, the Appeals Council vacated the May

6, 2009 decision and remanded the case back to the ALJ for further administrative proceedings (Tr. 112-14).

On June 3, 2010, the ALJ held another hearing (Tr. 24-58). On August 5, 2010, the ALJ issued a second written decision in which he again found that plaintiff was not disabled pursuant to the Social Security Act (Tr. 10-21). On February 17, 2011, the Appeals Council denied plaintiff's request for review of this second decision, making the August 5, 2010 written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-4). See 20 C.F.R. § 404.981.

On March 21, 2011, plaintiff filed a Complaint seeking judicial review of the ALJ's August 5, 2010 written decision (see ECF No. 1). On June 23, 2011, defendant filed the sealed administrative record regarding this matter ("Tr.") (see ECF No. 15). In her Opening Brief, plaintiff contends that the ALJ erred in, among other things, his review of: (1) the medical evidence; (2) plaintiff's credibility; and (3) lay testimony (see Opening Brief, ECF No. 18, pp. 1-2). Plaintiff complains that the ALJ erred in assessing plaintiff's Residual Functional Capacity ("RFC") and that the ALJ's finding that plaintiff could perform other work existing in the national economy at step five of the sequential disability evaluation process was erroneous (see id.).

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical

or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (quoting Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Sandgathe v. Chater, 108 F.3d 978, 980 (1996) (per curiam) (quoting Andrews, supra, 53 F.3d at 1039). In addition, the Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (citing

Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of SSA, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing* SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) (other citation omitted)); see also Stout v. Commissioner of Soc. Sec., 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." Stout, supra, 454 F.3d at 1054 (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion. Stout, supra, 454 F.3d at 1054-55 (reviewing legal errors found to be harmless).

DISCUSSION

1. The ALJ failed to consider the appropriate period of time regarding plaintiff's alleged date of disability onset.

Plaintiff contends that the ALJ failed to consider the appropriate period of time regarding plaintiff's alleged date of disability onset (see Opening Brief, ECF No. 18, p. 3). Defendant responds that plaintiff did not allege any prejudice from this issue and failed to demonstrate harm (see Response, ECF No. 19, pp. 8-9).

At plaintiff's June 3, 2010 hearing, her attorney indicated the intention to amend plaintiff's alleged date of disability onset to July 10, 2008 (Tr. 30-32). However, the ALJ included in his written decision the finding that at "the most recent hearing, the alleged onset date was affirmed as June 2006" (Tr. 13).

The ALJ failed to find that plaintiff was disabled in part due to reliance on the October 11, 2006 treatment records of Dr. Ashwin Rao, M.D. ("Dr. Rao") (see Tr. 18). The ALJ supports his failure to credit fully plaintiff's testimony in part on the finding that objective "medical findings do not reveal the degree of dysfunction alleged by the claimant" (id.). The ALJ supported this finding by noting that "at the time of examination by Dr. Rao, the claimant was able to perform coordination tests without difficulty" (id.). The ALJ cites other objective evidence from Dr. Rao's October 11, 2006 examination apparently without realizing that this examination occurred almost two years prior to plaintiff's amended alleged disability onset date of July 10, 2008 (Tr. 30-32).

When considering the evidence from medical sources, the ALJ explicitly gave great weight to Dr. Rao's October 11, 2006 opinion (Tr. 18). The ALJ also discussed the opinions of non-examining state agency medical consultants, who relied on Dr. Rao's October 11, 2006 opinion (see id.). Therefore, in addition to relying on this evidence from over a year and a half prior to plaintiff's alleged onset date of disability in order to discount plaintiff's testimony, the ALJ also relied on this evidence in his discussion of the medical evidence in support of his discounting of the medical opinion of plaintiff's treating physician, Dr. Robert Thorpe, M.D. ("Dr. Thorpe") (see id.).

Although the opinion of Dr. Rao relied on by the ALJ is relevant, it is likely that the ALJ gave it more weight than it was due, as the ALJ apparently considered the opinion to be within the time frame of plaintiff's alleged disability. As the ALJ relied on this opinion, as well as the opinion based on Dr. Rao's opinion by the non-examining state agency medical consultants, both in failing to credit plaintiff's testimony as well as in his review of the medical evidence, this factor weighs against a finding by this Court that the ALJ's decision is based on substantial evidence in the record as a whole. Here, plaintiff testified that things had gotten worse for her somewhat since her diagnosis with chronic obstructive pulmonary disorder (see Tr. 36). In order for the ALJ to rely properly on evidence from prior to plaintiff's alleged onset date of disability in order to find that plaintiff was not disabled, the ALJ should have indicated his awareness of the fact that the treatment records on which he was relying pre-dated plaintiff's date of alleged onset of disability. As plaintiff does not contend that she was disabled until July 10, 2008, the ALJ's citation to evidence from over a year prior to July 10, 2008 does little to demonstrate that plaintiff was not disabled after July 10, 2008. Because the ALJ here relied heavily on evidence substantially before July 10, 2008 in order to find that plaintiff was not disabled after July 10, 2008 without awareness of plaintiff's actual alleged date of disability onset, the Court concludes that this error by the ALJ was not harmless.

2. The ALJ failed to evaluate properly the medical evidence.

a. The ALJ did not evaluate properly plaintiff's alleged date of disability onset

The Court already has concluded that the ALJ erred by relying on the opinions by Dr. Rao in 2006 and the opinions of the reviewing state agency medical consultants based

on Dr. Rao's opinion without explicit discussion that this evidence predated plaintiff's alleged date of disability, see supra, section 1. The ALJ relied on this evidence predating plaintiff's alleged onset of disability when reviewing the medical evidence and failing to give controlling weight to plaintiff's treating physician, Dr. Thorpe.

      b.  The ALJ failed to provide legitimate reasons for his failure to give controlling weight to the opinions by treating physician Dr. Thorpe.

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." Edlund v. Massanari, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (*citing* SSR 96-2p, 1996 SSR LEXIS 9); see also 20 C.F.R. § 416.902 (non-treating physician is one without "ongoing treatment relationship"). The decision must "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the [] opinion." SSR 96-2p, 1996 SSR LEXIS 9. However, "[t]he ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004) (*quoting* Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (*citing* Baxter v. Sullivan, 923 F.2d

1391, 1396 (9th Cir. 1991); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)). Even if

a treating or examining physician's opinion is contradicted, that opinion "can only be

rejected for specific and legitimate reasons that are supported by substantial evidence in

the record." Lester, supra, 81 F.3d at 830-31 (citing Andrews v. Shalala, 53 F.3d 1035,

1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and

thorough summary of the facts and conflicting clinical evidence, stating his interpretation

thereof, and making findings." Reddick, supra, 157 F.3d at 725 (citing Magallanes v.

Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

      In general, more weight is given to a treating medical source's opinion than to the

opinions of those who do not treat the claimant. Lester, supra, 81 F.3d at 830 (citing

Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)). On the other hand, an ALJ need

not accept the opinion of a treating physician, if that opinion is brief, conclusory and

inadequately supported by clinical findings or by the record as a whole. Batson v.

Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004)

(citing Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)); see also Thomas v.

Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). An examining physician's opinion is

"entitled to greater weight than the opinion of a nonexamining physician." Lester, supra,

81 F.3d at 830 (citations omitted); see also 20 C.F.R. § 404.1527(d). A non-examining

physician's or psychologist's opinion may not constitute substantial evidence by itself

sufficient to justify the rejection of an opinion by an examining physician or

psychologist. Lester, supra, 81 F.3d at 831 (citations omitted). However, "it may

constitute substantial evidence when it is consistent with other independent evidence in

the record." <u>Tonapetyan</u>, <u>supra</u>, 242 F.3d at 1149 (*citing* <u>Magallanes</u>, <u>supra</u>, 881 F.2d at 752). "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." <u>Van</u> <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing* <u>Lester</u>, <u>supra</u>, 81 F.3d at 831); <u>see also</u> 20 C.F.R. § 404.1527(d)(2)(i) (when considering medical opinion evidence, the Commissioner will consider the length and extent of the treatment relationship).

Here, the ALJ failed to give controlling weight to the opinion of treating physician, Dr. Thorpe, as to the nature and severity of plaintiff's impairment, therefore the ALJ was required to find that Dr. Thorpe's opinion was not well-supported or that it was inconsistent with the other substantial evidence in the record. <u>See</u> <u>Edlund</u>, <u>supra</u>, 2001 U.S. App. LEXIS 17960 at *14. The Court already has discussed the ALJ's reference to treatment records by Dr. Rao from over a year prior to plaintiff's alleged onset date of disability, <u>see</u> <u>supra</u>, section 1. The other medical evidence relied on by the ALJ were those opinions provided by the non-examining medical expert, Dr. Sami A. Nafoosi, M.D. ("Dr. Nafoosi") and the examining physician, Dr. Rex Bolin, M.D. ("Dr. Bolin"). For the reasons discussed below, the Court finds that Dr. Thorpe's opinion was well-supported by his treatment records and that Dr. Thorpe's opinion was not inconsistent with other substantial evidence in the record cited by the ALJ. <u>See</u> <u>Edlund</u>, <u>supra</u>, 2001 U.S. App. LEXIS 17960 at *14.

Dr. Thorpe first examined plaintiff on July 8, 2008 (Tr. 729). He indicated plaintiff's subjective report of shortness of breath and cough (<u>id.</u>). He noted plaintiff's

report that she was down to smoking a pack of cigarettes a day from two packs a day (id.). He indicated that plaintiff was positive for "productive cough, wheezing, shortness of breath" (id.). Dr. Thorpe assessed that plaintiff suffered from "bronchitis; probable chronic obstructive pulmonary disease; tobacco abuse; questionable hypertension; and mixed connective tissue disease" (id.). Dr. Thorpe advised plaintiff to quit smoking, ordered various tests and prescribed various medications (id.).

On July 22, 2008, Dr. Thorpe examined plaintiff (Tr. 727). He assessed chronic obstructive pulmonary disease and advised plaintiff to continue using her inhaler (id.). Dr. Thorpe examined plaintiff again on September 18, 2008 (Tr. 725). He indicated plaintiffs' subjective report of increasing cough and some shortness of breath (id.). On examination of plaintiff's lungs, Dr. Thorpe indicated his observation of "distant breath sounds but clear" (id.). He assessed plaintiff with bronchitis and chronic obstructive pulmonary disease, as well as hypertension (id.).

Plaintiff also had a pulmonary function test on September 18, 2008 (Tr. 739). The test results indicated, among other things, that plaintiff's lung age was 99 years and her FEV1 (forced expiratory volume in one second) was almost identical post-medication as pre-medication (id. (FEV1 values of 1.32 and 1.31)). Dr. Thorpe assessed the objective test results as "significant restrictive/obstructive changes consistent with COPD" (id.).

On October 9, 2008, plaintiff was examined again by Dr. Thorpe (Tr. 723). He noted that plaintiff's "chest x-ray showed some evidence of streaky bronchiectasis right upper lobe" (id.). He assessed that plaintiff was suffering from an acute exacerbation of her chronic obstructive pulmonary disease and adjusted her medications (id.). On

November 12, 2008, Dr. Thorpe examined plaintiff at a follow-up appointment (Tr. 721). He assessed that plaintiff suffered from hypertenstion; chronic obstructive pulmonary disease/tobacco abuse; and, mixed connective tissue disease (id.). Dr. Thorpe prescribed plaintiff lisinopril/HCTZ and gave her samples of spiriva (id.).

On February 9, 2009, Dr. Thorpe examined plaintiff and observed that her lungs were clear but exhibited "distant breath sounds" (Tr. 747). He indicated that her pulmonary functions tests "as previously reported showed marked restrictive lung disease" (id.). At this time, he assessed that plaintiff suffered from "chronic obstructive pulmonary disease, relatively severe; mixed connective tissue disease; hypertension, not optimally controlled; and nighttime foot cramps" (id.). Dr. Thorpe adjusted plaintiff's medications (id.).

Also on February 9, 2009, Dr. Thorpe indicated his opinion that plaintiff's complaints of periodically severe fatigue and shortness of breath both on exertion and often without exertion were credible and that she was not a malingerer (Tr. 684-85). Dr. Thorpe opined specifically that if plaintiff had attempted even sedentary work since June, 2003 on a full time basis, that the combination of her medical impairments would have resulted in absenteeism of three or more days per month on a more probable than not basis (id.).

On August 28, 2009, Dr. Thorpe examined plaintiff and observed "clear, distant breath sounds" in her lungs (Tr. 746). He assessed that her hypertension was possibly "over treated," and assessed again that plaintiff suffered from chronic obstructive

pulmonary disease/tobacco abuse and mixed connective tissue disease (id.). He adjusted her medications and again recommended that plaintiff quit smoking (id.).

Plaintiff had a second pulmonary function test on December 4, 2009 (Tr. 753). Test result indicated, among other things, that plaintiff's lung age was 72 years and that she demonstrated improvement following the administration of bronchodilators (id.). Dr. Thorpe assessed the results as restrictive/obstructive pattern consistent with COPD, improved with bronchodilators (id.).

Plaintiff had a third pulmonary function test on February 16, 2010 (Tr. 686-88). These tests results indicated the greatest degree of change in FEV1 after medication of all of the three tests (Tr. 686). The test results were assessed by Dr. Barry J. Weled, M.D., who opined that the tests demonstrated "moderate reversible airways disease consistent with chronic obstructive pulmonary disease and/or asthma" (Tr. 688).

The ALJ failed to discuss the vast majority of the treatment records by treating physician, Dr. Thorpe. For example, the ALJ failed to mention any of Dr. Thorpe's examinations of plaintiff or his objective findings based on his examinations, such as breath sounds in her lungs. The ALJ failed to mention that Dr. Thorpe assessed plaintiff's chronic obstructive pulmonary disease as relatively severe (Tr. 747) or that he assessed that she suffered from acute exacerbation in October, 2008 (Tr. 723). As the ALJ discussed and relied on opinions from non-examining sources, as well as on sources predating plaintiff's alleged onset date (see Tr. 18), the ALJ's failure to discuss the treatment notes from plaintiff's treating physician during the relevant time frame is particularly problematic. The treatment records and opinions of Dr. Thorpe are significant, probative

evidence that the ALJ should have discussed. <u>See</u> <u>Flores v. Shalala</u>, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting* <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting* <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3d Cir. 1981))).

The ALJ gave one reason to disregard Dr. Thorpe's opinion that it was more probable than not that plaintiff would be absent three or more days per month as a result of her impairments if she attempted even sedentary work full time (Tr. 19; <u>see also</u> Tr. 684-85). The ALJ indicated that "Dr. Thorpe did not give any objective medical findings in support of this extreme conclusion" (Tr. 19). However, Dr. Thorpe was plaintiff's treating physician and the Court has discussed much objective medical evidence from Dr. Thorpe's treatment notes, including objective observation of breath noises following examination of the lungs on multiple occasions (<u>see</u>, <u>e.g.</u>, Tr. 746), results from pulmonary functions tests, which Dr. Thorpe assessed (Tr. 739, 753), as well as plaintiff's chest x-ray, which Dr. Thope assessed as showing "some evidence of streaky bronchiectasis right upper lobe"(Tr. 723).

It is clear from the record that Dr. Thorpe's opinion regarding plaintiff's likely absenteeism was based on his many examinations of plaintiff and the various objective tests on plaintiff, such as pulmonary function tests and a chest x-ray. For this reason, and based on the relevant record, the Court concludes that the ALJ's finding that Dr. Thorpe did not provide objective medical findings in support of his opinion regarding plaintiff's likely absenteeism is not a finding based on substantial evidence in the record as a whole. As a result, the ALJ's failure to credit this opinion of plaintiff's treating physician, Dr.

Thorpe, on this basis should be reversed for further evaluation. See Edlund, supra, 2001

U.S. App. LEXIS 17960 at *14; Magallanes v. Bowen, 881 F.2d 747, 750.

Regarding the extent to which Dr. Thorpe's opinion was consistent with the rest of the substantial evidence in the record, plaintiff has referenced a scientific research article suggesting that COPD does not produce disabling shortness of breath or fatigue at all times, but results in periods of exacerbation (see Opening Brief, ECF No. 18, p. 10). More importantly, Dr. Thorpe, plaintiff's treating physician, opined that the severity of plaintiff's impairment fluctuated and included periodic exacerbation (see, e.g., Tr. 723). Therefore, the fact that plaintiff's third pulmonary test indicated better functioning than her first pulmonary test does not make Dr. Thorpe's opinion inconsistent with the objective medical evidence in the record as a whole.

Similarly, although Dr. Rex Bolin, M.D. ("Dr. Bolin") assessed differently the severity of plaintiff's impairment, Dr. Bolin was a non-treating, examining physician, who evaluated plaintiff on one occasion and did not discuss all of plaintiff's test results. In addition, Dr. Bolin indicated that his judgments were made on his review of "limited data" and that he could not "attest to the quality" (Tr. 691).

For these reasons, and based on the relevant record, the Court concludes that the ALJ did not give specific and legitimate reasons supported by substantial evidence in the record for his rejection of Dr. Thorpe's opinion. See Lester, supra, 81 F.3d at 830-31.

c.  The ALJ did not explain adequately why Dr. Nafoosi's opinion regarding environmental limitations on plaintiff's ability to work were not adopted

Although the ALJ relied in part on Dr. Nafoosi's opinion when failing to give controlling weight to the opinion by plaintiff's treating physician, Dr. Thorpe, the ALJ failed to include all of the limitations from Dr. Nafoosi's opinion in his assessment of plaintiff's residual functional capacity ("RFC"). Dr. Nafoosi opined that plaintiff was limited to working with no concentrated exposure to dust, chemicals, fumes vapors and sudden temperature changes (see Tr. 47). The ALJ failed to adopt this limitation without explicitly explaining the discrepancy (see Tr. 17). The Court notes that the ALJ included the following discussion in a separate portion of the opinion:

> I have determined that the job as a sheller could still be performed even if [plaintiff's] RFC included the need to avoid fumes, gases, and odors. With the addition of this restriction, the vocational expert eliminated this job from consideration. However, as the claimant continues to smoke cigarettes, I have not found any environmental limits that would not be less severe than intentionally inhaling smoke.

(Tr. 20).

The ALJ appears to be putting his own interpretation of the medical record over that of the doctor. While it may be tempting for an ALJ to consider the obvious incongruity of a smoker eliminating environmental contaminants such as fumes, gasses and odors, Dr. Nafoosi was aware of plaintiff's smoking, and nevertheless, opined that she suffered environmental limitations on her ability to work.

According to Social Security Ruling ("SSR") 96-8p, a residual functional capacity assessment by the ALJ "must always consider and address medical source opinions. If the

RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5 at *20. For the reasons discussed, and based on the relevant record, the Court concludes that the ALJ did not explain adequately why the opinion from Dr. Nafoosi regarding plaintiff's environmental limitations was not adopted into plaintiff's RFC. See id.; see also Reddick, supra, 157 F.3d at 725.  On remand, the ALJ should provide further clarification of this analysis.

    3. The ALJ erred when considering plaintiff's credibility and plaintiff's testimony should be considered anew following remand of this matter.

The ALJ relied on "objective medical findings", in part, to fail to credit fully plaintiff's testimony (see Tr. 18). The Court already has determined that the ALJ erred in his review of the medical evidence, see supra, section 2. In addition, a determination of plaintiff's credibility relies on the assessment of the medical evidence. See 20 C.F.R. § 404.1529(c). The Court also concludes that the ALJ committed legal error in his review of plaintiff's testimony, as discussed below.

Regarding activities of daily living, the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . . does not in any way detract from her credibility as to her overall disability." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007 (quoting Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth Circuit specified "the two grounds for using daily activities to form the basis of an adverse credibility determination:" (1) whether or not they contradict the claimant's other testimony; and (2) whether or not the activities of daily living meet "the threshold for

transferable work skills." <u>Orn</u>, <u>supra</u>, 495 F.3d at 639 (*citing* <u>Fair</u>, <u>supra</u>, 885 F.2d at 603). As stated by the Ninth Circuit, the ALJ "must make 'specific findings relating to the daily activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination. <u>Orn</u>, <u>supra</u>, 495 F.3d at 639 (*quoting* <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005)).

Here, the ALJ included the following in his discussion of plaintiff's credibility:

> The claimant's activity level does not support her allegation of disability. Although she reported to Dr. Rao (examining physician) that she needed assistance from her family, she did a ' . . . fair amount of chores at home including cooking, cleaning and light laundry work.' (internal citation to Exhibit 10F-3).

(Tr. 18).

The record cited by the ALJ included the following from Dr. Rao's report: "[The claimant] does a fair amount of chores at home including cooking, cleaning, and light laundry work but does have assistance from family members in doing this" (Tr. 651). The ALJ relied in part on plaintiff's daily activities to form the basis of his adverse credibility determination without finding that they contradicted any specific testimony by plaintiff and without making a specific finding that plaintiff's daily activities were transferable to a work setting, committing legal error (<u>see</u> Tr. 18). <u>See</u> <u>Orn</u>, <u>supra</u>, 495 F.3d at 639. For this reason, based on the ALJ's errors in review of the medical evidence and based on the relevant record, the Court concludes that plaintiff's testimony should be evaluated anew following remand of this matter. <u>See</u> <u>id.</u>

1    4.  <u>The lay evidence should be considered anew following remand of this matter</u>.

2        The Court already has concluded that this matter should be remanded for further

3    consideration of the medical evidence, as well as plaintiff's testimony, <u>see supra</u>, sections

4    2 and 3. For this reason and based on a review of the relevant record, the Court concludes

5    that the lay testimony should be evaluated anew following remand of this matter. <u>See</u>

6    <u>Bruce v. Astrue</u>, 557 F.3d 1113, 1115 (9th Cir. 2009) (*quoting* <u>Van</u> <u>Nguyen</u>, <u>supra</u>, 100

7    F.3d at 1467); <u>see also</u> 20 C.F.R. § 404.1513 (d)(4).

8    5.  <u>Plaintiff's residual functional capacity</u> should be considered anew following
9        remand of this matter.
10

11       The ALJ erred not only in his review of the medical evidence and plaintiff's

12   testimony, <u>see supra</u>, sections 2 and 3, but also in his determination regarding plaintiff's

13   residual functional capacity ("RFC"). The ALJ gave "great weight" to the opinion

14   evidence offered at plaintiff's hearing by Dr. Nafoosi (<u>see</u> Tr. 18). However, the ALJ did

15   not explain properly his failure to adopt Dr. Nafoosi's opinion that plaintiff was limited

16   to working with no concentrated exposure to dust, chemicals, fumes vapors and sudden

17   temperature changes, as discussed above, <u>see supra</u>, section 2. For these reasons, and

18   based on a review of the relevant record, the Court concludes that plaintiff's RFC, and

19   the rest of the five-step sequential disability evaluation process, should be evaluated anew

20   following remand of this matter. <u>See</u> SSR 96-8p, 1996 SSR LEXIS 5 at *20.

21

22

23

24

6. This matter should be remanded to the Commissioner for further administrative proceedings.

The Ninth Circuit has put forth a "test for determining when evidence should be credited and an immediate award of benefits directed." Harman v. Apfel, 211 F.3d 1172, 1178, 2000 U.S. App. LEXIS 38646 at **17 (9th Cir. 2000). It is appropriate where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Harman, 211 F.3d at 1178 (*quoting* Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir.1996)).

Here, outstanding issues must be resolved. See Smolen, 80 F.3d at 1292. There is a large volume of medical and other evidence, and the evidence is not conclusive. In addition, the ALJ did not evaluate thoroughly the treatment notes and opinions by plaintiff's treating physician, Dr. Thorpe, see supra, section 2.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th

Cir. 1999) (*quoting* <u>Waters v. Gardner</u>, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing* <u>Calhoun v. Bailar</u>, 626 F.2d 145, 150 (9th Cir. 1980))).

Therefore, remand is appropriate to allow the Commissioner the opportunity to consider properly all of the medical evidence as a whole and to incorporate the properly considered medical evidence into the consideration of plaintiff's credibility and residual functional capacity. <u>See</u> <u>Sample</u>, <u>supra</u>, 694 F.2d at 642. In addition, remand will provide the Commissioner the opportunity to evaluate and express the decision in terms of plaintiff's amended alleged date of disability onset.

<u>CONCLUSION</u>

The ALJ failed to evaluate properly the appropriate period of alleged disability and failed without sufficient explanation or legitimate reasons to give controlling weight to the opinion by plaintiff's treating physician that plaintiff likely would suffer absenteeism of three or more days a month when attempting even sedentary work full time. The ALJ also erred in relying on plaintiff's limited daily activities when considering plaintiff's credibility without a finding of contradiction with plaintiff's testimony or a finding of transferability to a work setting.

Based on these reasons and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** to the administration for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. <u>See also</u> Fed. R.

Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. <u>See</u> 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on March 9, 2012, as noted in the caption.

Dated this 13th day of February, 2012.


_____
J. Richard Creatura
United States Magistrate Judge